**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LaTonya Wright, individually and on behalf of all others similarly situated, | |
| Plaintiff | Case No. |
| - against - | Class Action Complaint |
| McCormick & Company, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff LaTonya Wright ("Plaintiff"), by her undersigned attorneys, alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

**INTRODUCTION**

1. This is a proposed class action brought on behalf of New York consumers with respect to the Cholula Original Hot Sauce (the "Product").

2. Consumers are passionate about hot sauces. "[T]he hot sauce market size in the U.S. is projected to grow significantly, reaching an estimated value of USD 1.94 billion by 2032, driven by increasing demand of Mexican and Asian cuisines in the country and increased product launch by key market size players."[1]

3. The main ingredients in hot sauce are chili peppers, vinegar, and salt, but hot sauces can be made with different blends of peppers, vinegars, spices, and other ingredients. There are hundreds, if not thousands, of distinct hot sauces available commercially.

4. McCormick & Company, Inc. ("Defendant") markets and sells the Cholula Original

---

[1] *See* Fortune Business Insights, "Hot Sauce Market Size, Share & Industry Analysis" available at: https://www.fortunebusinessinsights.com/industry-reports/hot-sauce-market-100495 (last accessed August 5, 2026).

Hot Sauce.

5.      The Cholula Original Hot Sauce is the signature product of the Cholula brand. It was upon the goodwill and recognition of the Product that brand extensions have been introduced. Defendant explained in its press release dated January 22, 2025:

> Cholula®, makers of the #1 Mexican Hot Sauce in the World*, is welcoming a new member to its 'familia' of products, Cholula® Extra Hot. Made using many of the same iconic ingredients Cholula® Hot Sauce is known for, this extra spicy version is the evolution of the generations-old family recipe that continues to feature arbol and piquin peppers with a blend of vibrant spices. Cholula Extra Hot is available online now and coming to grocery shelves nationwide this Spring.[2]

6.      Defendant similarly touts on its website: "Cholula Original Hot Sauce is crafted from a generations-old family recipe that features arbol and piquin peppers, with a signature blend of spices, to deliver Mexican hot sauce heat and flavor."[3]

7.      The Product's suggested retail price is $5.99 for a 5-ounce bottle or approximately $1.20 per ounce. *Id*

8.      On some sizes of the Product, Defendant states on the packaging itself: "Cholula – The Original Flavorful Fire."

---

[2] https://news.mccormick.com/2025-01-22-Cholula-R-Spices-Things-Up-on-National-Hot-Sauce-Day-with-New-Cholula-Extra-Hot (last accessed on August 5, 2026).
[3] https://www.mccormick.com/products/cholula-original-hot-sauce-5-fl-oz (last accessed August 5, 2026).

9.    The following is a picture of the full statement on the label:



10.    Defendant is not the originator of the Product but instead purchased the Cholula

brand on November 24, 2020. Defendant explains the Product's origins on its website:

**GENERATIONS OF AUTHENTIC FLAVOR**

Our rich and authentic recipe was originally prepared for the famed Jose
Cuervo family by beloved cook and Abuelita figure affectionately known
as "La Chila." From her likeness on the front of every bottle, to the exquisite
blend of peppers and spices beneath it, Cholula is a celebration of food,
flavor, and our Mexican roots.[4]

11.    After acquisition, Defendant maintained the recognizable, distinctive aspects of the

Product including the wooden cap, the colors, the font, the name, the prominent uses of "Original,"

the images of produce, and the image of "Abuelita" figure.

---

[4] https://www.cholula.com/en-us/- (last accessed on August 5, 2026)

2

12.   The following is an example of the current front label of the Product, obtained from Defendant's website:[5]



13.   The following is an image of the Product before Defendant's acquisition obtained

---

[5] https://www.mccormick.com/products/cholula-original-hot-sauce-5-fl-oz
(last accessed August 5, 2026).

3

from the archived website at www.cholula.com as of January 2017.[6]



14. Regardless of size of the Product's bottle, Defendant's front label of the Product always includes the same distinctive colors, font, name, images of produce, image of the "Abuelita" figure, and the "Original" designations.

---

[6] https://web.archive.org/web/20170106232456/http://www.cholula.com/original.html (last accessed August 5, 2026).

4

15.    The Product's front label misleads reasonable consumers into believing that the Product is the authentic, one-of-a-kind Mexican hot sauce. However, this is not the case because the Product now includes additives that were not present even a few years ago, let alone generations ago.

16.    Before Defendant's acquisition of Cholula, the ingredients of the Product were: Water, arbol and piquin peppers, salt, vinegar, garlic powder, spices, and xanthan gum.

17.    After the acquisition, Defendant materially changed the ingredients of the Product to: Water, arbol and piquin peppers, salt, *acetic acid*, *xanthan gum*, spices, apple cider vinegar, garlic powder, and *natural flavor*.

18.    Defendant nowhere discloses that it changed the signature "Original" Product. Defendant nowhere discloses that it added acetic acid and "natural flavor" and increased the ratio of xanthan gum from the "Original."

19.    Similarly, Defendant has removed statements on its website that the Product is imported from Mexico. The Product was made for decades in Jalisco, Mexico, where most of the arbol and piquin peppers in the Product were sourced. It may be that the Product is or will no longer be produced in Jalisco, Mexico, further removing the Product from its traditional Mexican roots.

20.    Consumers have noticed a change in the look and taste of the sauce, and many have complained on social media (including Reddit, LinkedIn, and Instagram) that the Product is no longer the Product that they previously enjoyed. However, most reasonable consumers do not read the fine-print ingredients list or compare the ingredients on new bottles versus old bottles.

21.    Defendant is capitalizing on the goodwill from the Product's authenticity and historic recipe, as well as decades of ubiquitous marketing, while quietly reformulating the Product with

5

cheaper, less traditional ingredients. By preserving the Product's iconic branding, front label elements, and "Original" designations, Defendant induced reasonable consumers to purchase what they believed was the "Original" Product when, in fact, it has materially changed.

22. Defendant's deceptive conduct has caused reasonable consumers to believe the Product to be the "Original" Mexican Cholula hot sauce and therefore to choose to buy the Product over competing hot sauces, many of which contain only traditional ingredients and often cost less than the Product.

23. For example, Yellow Bird's Classic Jalapeno Hot Sauce contains no acetic acid or xanthan gum and is made of the following ingredients: Red Jalapeno Peppers, Carrots, Distilled Vinegar, Onions, Garlic, Cane Sugar, Salt, Lime Juice Concentrate. Yellow Bird's Classic Jalapeno Hot Sauce cost less per ounce than the Product.

24. Plaintiff now brings this action on behalf of a class of consumers to recover the monies they paid or overpaid for the Product as a result of the misleading representations and omissions, as well as statutory damages and other relief detailed below.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed class and Defendant.

26. This court has personal jurisdiction over Defendant because it conducts and transacts business within New York and contracts to supply and supplies goods within New York.

27. Venue is proper because Plaintiff resides in this District, and Defendant does business in this District and in New York. Additionally, a substantial part of the events and

6

omissions giving rise to the claims occurred in this District.

<strong><u>PARTIES</u></strong>

28.     Plaintiff LaTonya Wright is a citizen of New York residing in Brooklyn, New York.

29.     Defendant is a Maryland corporation with a principal place of business in Maryland.

30.     Defendant owns the Cholula brand and controls the labeling and marketing of the Product.

31.     Plaintiff has bought and used the Product for years as her go-to hot sauce. In 2026, Plaintiff bought the Product at or around the suggested retail price of $5.99 at the Food Bazaar grocery store in Brooklyn. Plaintiff saw the Product's front labeling and purchased Defendant's Product in a 5-oz bottle. Plaintiff would not have purchased the Product at that price or at all had she known that Defendant materially changed the ingredients of the Product.

<strong><u>COMMON FACTUAL ALLEGATIONS</u></strong>

**A.      Defendant Deliberately Deceives Consumers by Falsely Labeling the Product as "Original."**

32.     The words and image on the front label of the Product convey the message that the Product is the "Original," made from traditional, Mexican ingredients.

33.     This messaging is reinforced by numerous additional representations made on Defendant's website,[7] including the following:

---

[7] https://www.mccormick.com/collections/cholula-hot-sauces/products/cholula-original-hot-sauce-5-fl-oz (last visited on August 5, 2026).

7









34.     On its website, Defendant also has a page that provides more information concerning Cholula. *See* https://www.mccormick.com/pages/about-cholula (last visited August 5, 2026). Defendant asks: "What is Cholula?" Defendant answers: "Cholula is a premium hot sauce made from a blend of arbol & piquin peppers, as well as with an array of regional spices. Our simple, yet complex flavor elevates dishes and is best paired with clean, real, and fresh foods." Defendant also claims, "We are a trusted guide to high quality food with a specialty in Mexican cuisine." *Id.*

**B.      Consumers Reasonably Relied on Defendant's Uniform, Front-Label Representations to Their Detriment.**

35.     Despite the images and text on the Product's front label, the Product is not the "Original" premium hot sauce with traditional Mexican ingredients that consumers were led to expect.

36.     Reasonable consumers, including Plaintiff, purchased the Product based upon their belief that the Product was the "Original" Cholula hot sauce containing authentic, traditional Mexican ingredients. However, Defendant materially changed the Product to include less traditional and more lab-produced ingredients in order to reduce the cost of producing the Product.

37.     For example, instead of the fourth ingredient by weight being vinegar, the fourth ingredient is now acetic acid. As far back as 1952, the Federal Food and Drug Administration stated: "This Administration, in the enforcement of the Federal Food, Drug, and Cosmetic Act, has maintained the position that diluted acetic acid is not a vinegar of any kind and has advised against its use in food products customarily expected to contain vinegar." FDA Compliance Program Manual, Section 562.100. This section also states, "Acetic acid should not be substituted for vinegar in pickled products which consumers customarily expect to be prepared with vinegar." *Id.*

38.     The reformulated Product now lists "xanthan gum" as the fifth ingredient instead of the last. Xanthan gum is a lab-created food thickener and stabilizer.

39. The reformulated Product now lists "natural flavor" as the final ingredient by weight. "Natural flavors" are typically highly processed, chemical additives. Minute amounts of "natural flavors" provide far more flavor per weight than traditional ingredients but with the loss of the complexity, nuance, and depth of traditional ingredients.

40. Defendant's front label images and statements mislead consumers into believing that the Product is the "Original," authentic Cholula hot sauce when, in fact, Defendant materially changed the ingredients of the Product from the "Original" after its acquisition.

41. With the Product's deceptive labeling, Defendant has been able to sell more units of the Product, at higher prices, than it could have if it had disclosed its ingredient changes.

**C.      Defendant's Wrongful Conduct Caused Injury to Plaintiff and the Class Members.**

42. As a result of these unfair and deceptive practices, Plaintiff and members of the Class paid more money for the Products than what they would have, had they known the truth. Specifically, Plaintiff and Class members paid the purchase price or a price premium for a Product that they believed was the "Original" Product. Had they known that Defendant changed the ingredients of the "Original" Product with cheaper ingredients and more fillers, they could have instead bought other hot sauces, many of which cost less and/or are made with more traditional ingredients.

43. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, the Product that has materially changed from the "Original." As a result, Plaintiff and the Class members were injured in that they:

> a.      Paid a sum of money for the Product that was not as Defendant represented;
>
> b.      Paid a premium price for the Product that was not as Defendant represented;

11

c. Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendant represented; and

d. Received a product that was of a different quality than what Defendant promised.

44. Had Defendant not made the false, misleading, and deceptive representations and omissions on the front label of the Product, Plaintiff and the Class members would not have been willing to pay the same amount for the Product they purchased and/or Plaintiff and the Class members would not have been willing to purchase the Product at all. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

45. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class (the "Class"):

> **New York Class**: All consumers who purchased the Product in New York during the statute of limitations for each cause of action alleged.

46. The Class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

47. Common questions of law or fact predominate and include whether the Product's front label was likely to deceive reasonable consumers and if Plaintiff and Class members are entitled to damages.

48. Plaintiff's claims and basis for relief are typical of other members because all were subjected to the same front-label unfair, misleading, and deceptive representations, omissions, and actions.

49. Plaintiff is an adequate representative because her interests do not conflict with those

12

of other members.

50.    No individual inquiry is necessary because the focus is only on Defendant's practices and the class is definable and ascertainable.

51.    A class action is superior to other methods for fair and efficient adjudication. Individual actions would risk inconsistent results, be repetitive, and are impractical to justify, as the claims are modest.

52.    Plaintiff's counsel are competent and experienced in complex class action litigation and intend to adequately and fairly protect Class members' interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349

### (On Behalf of Plaintiff and Other Class Members)

53.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

54.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

55.    The conduct of Defendant alleged herein constitutes violations of GBL § 349.

56.    Defendant made its untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

57.    Plaintiff and Class members are entitled to monetary and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs, as well as statutory damages of $50 per unit purchased.

### SECOND CAUSE OF ACTION

## VIOLATION OF NEW YORK GBL § 350

### (On Behalf of Plaintiff and Other Class Members)

58.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

60.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

61.    The conduct of Defendant alleged herein constitutes violations of GBL § 350.

62.    Defendant made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

63.    Plaintiff and Class members are entitled to monetary and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs, as well as statutory damages of $500 per unit purchased.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** Plaintiff prays for judgment:

14

1.    Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Class, respectively;

2.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3.    Awarding monetary damages, statutory and/or punitive damages, and interest;

4.    Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5.    Such other and further relief as the Court deems just and proper.

Dated: August 10, 2026

Respectfully submitted,

**REESE LLP**
*/s/ Sue J. Nam*

Sue J. Nam
*snam@reesellp.com*
Kate J. Stoia
*kstoia@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**LAUKAITIS LAW LLC**
Kevin Laukaitis
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Telephone: (215) 789-4462
*klaukaitis@laukaitislaw.com*

*Counsel for Plaintiff and the Proposed Class*